[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 7895
This action, by writ and complaint, claiming a dissolution of the marriage of the parties and other relief, as on file, came to this court on June 23, 1995, with a return date of July 11, 1995, and thence to later dates, when the parties appeared for a limited contested trial which was heard on September 12, September 19, October 2, 1996.
Both parties filed pre-trial memoranda containing proposed orders with the court on September 12, 1996.
The court, having heard the evidence, finds the following:
The wife, Susan A. DaMico, whose maiden name was Susan A. Condelles, was lawfully married to the husband, Joseph J. DaMico, on October 14, 1989 in New Britain, Connecticut.
At least one party has resided continuously in this state twelve months next before the date of the filing of the complaint and all statutory stays have expired.
The marriage of the parties has broken down irretrievably.
There are no minor children issue of the marriage and no minor children have been born to the wife since the date of the marriage.
The wife is 31 years old and a 1983 high school graduate. She is employed as an assistant vice president of Fleet Bank and manages the branch located at Corbins Corner. She has been employed there since 1983, when she started as a teller, and has worked her way up the ladder. Her net income allowing for mandatory deductions $641.00 per week. She is in good health and working full time, and is well thought of by her employer.
The husband is 33 and is employed by Pratt and Whitney Aircraft and is a captain in the National Guard. He, too, is in good health. His net income from both employments allowing for mandatory deductions, is $843.87 per week.
At the time of the marriage in October of 1989 the parties had already purchased a house at 45 Birchcrest Drive in Southington, Connecticut. They obtained a mortgage for CT Page 7896 $128,700.00 and purchased the house for $144,900.00. Prior to the marriage, the plaintiff borrowed $5,000.00, using her 401K plan, then valued at $8,425.00, as collateral to pay for wedding expenses and items for the new house. She also paid the initial $500.00 security deposit toward the purchase of the house. The defendant contributed $19,500.00 of his own money toward the wedding expenses and purchase of the house from money he had saved in an account at the East Hartford Federal Credit Union.
The husband has a 401K plan through his employer which has a present value of approximately $90,000.00. There is an outstanding loan against his plan due to his borrowing approximately $10,000.00 in 1992 to pay for the expenses of refinancing the marital residence.
The wife has a 401K plan through her employer which has a present value of approximately $43,000.00. In 1994, she took out a loan against this plan in the amount of $6,900.00. That loan has been repaid.
After their marriage the parties made the husband's checking and savings account at the East Hartford Federal Credit Union joint and the husband deposited $500.00 every two weeks into that account during the course of the marriage. Although the plaintiff made some contributions, the amount of those contributions was not proven. The wife also had an additional checking account and accessed that account, as well as the E.H.F.C.U. account, to pay the household bills during the course of the marriage.
Commencing in February of 1994, the husband had to commute to Maryland to maintain his employment. Although this was only supposed to last a few months it stretched into a few years. The parties were thus separated, seeing each other only about 6 days per month, on weekends. This "commuter marriage" was the beginning of the end of this relationship. In April of 1995, the wife confronted the husband with her suspicion that he was having an affair, although the husband testified that his relationship with another woman did not develop until after the parties had separated.
In May of 1995, the husband moved out of the marital residences, taking only two suitcases of summer clothes. He returned a few times for some tools and small items. The wife claims that in September of 1995, she packed up all of the husband's other personal possessions in 30 boxes and had them CT Page 7897 shipped by truck to the husband's parents' home in Enfield. The wife claims certain valuable items the husband is seeking, a stamp collection and some gold jewelry, were in those boxes. The husbands and admits he has not looked through about a third of these boxes. The rest of his clothes the wife returned to him in December of 1995. The wife has retained possession of the wedding china and crystal, the furniture, appliances and other household items, some of which were purchased using joint marital funds after the parties' separation.
At the time of the parties' separation in May of 1995, there was $23,370.00 in the E.H.F.C.U. account, which the wife withdrew in June of 1995 without advising the husband or paying him any of the money with drawn. In addition to withdrawing the $23,370.00 from the E.H.F.C.U. account, the wife, without the consent of the husband sold and obtained cash for savings bonds and stocks which the husband owned prior to the marriage, valued at approximately $7,974.91. The wife liquidated these assets and withdrew the money from the checking account because she stated she needed money to keep the house going and to reimburse herself for loans that she had helped pay, although none of these loans were still outstanding in June, 1995. Despite her continued employment, her appropriation of jointly held assets without the husband's consent, and her receipt of at least $3,400.00 from the husband between May and October of 1995, the wife significantly increased the parties' joint liabilities by not paying utility and charge account bills, and she needlessly caused the loss of the house to foreclosure by failing to pay the mortgage. Many of her expenditures in the summer and fall of 1995 were unwise in light of her professed inability to meet her basic expenses. The wife's explanation as to how $34,749.91 of joint marital funds were expended in such a short period of time was not satisfactory.
The parties stipulated at the close of trial that even if the house can be sold before the December 2, 1996 law date a deficiency will be owed the bank holding the mortgage on the home. Judgment of foreclosure entered on August 26, 1996 in favor of the Federal National Mortgage Association. The amount of the judgment is in excess of $138,000.00 and the most recent appraisal on the home valued the property at $112,000.00
With regard to fault resulting in the breakdown of the marriage, the court finds the parties were equally at fault for the breakdown of the marriage in that they were unable to agree on mutually satisfactory goals or to communicate effectively with CT Page 7898 one another.
With regard to the division of property and the wife's request for periodic alimony in this case, the court has considered case law, the testimony of the witnesses, the exhibits, the financial affidavits of the parties, and their pretrial memoranda. In addition, the court has taken into consideration all of the criteria set forth in General Statutes Section 46b-81 as to the division of marital assets, Section 46b-82
as to awarding alimony, and Section 46b-62 as to awarding counsel fees.
Accordingly the court enters the following orders:
1. A decree of the dissolution of the parties' marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. Neither party shall pay alimony to the other.
3. The wife shall retain, free and clear of any claim of the husband, her sole interest in her 401K plan at Fleet Bank and any other pension benefit to which she is entitled.
4. The husband shall retain, free and clear of any claim of the wife, his sole interest in his 401K plan at Pratt and Whitney and any other pension benefit to which he may be entitled.
5. The parties shall retain their one-half interests in the marital residence at 45 Birchcrest Drive, Southington, Connecticut, as tenants in common. Each party shall assume and pay, and indemnify and hold the other harmless from, the payment of one-half of all amounts owed to the Federal National Mortgage Association.
6. With the exception of the large debt owed the USAA credit card, which the husband has already assumed as his sole obligation, the wife shall be responsible for the liabilities listed on her financial affidavit, (including those attached as Schedule A and the loan listed as an employment deduction with a weekly payment figure of $47.77), and she shall indemnify and hold the husband harmless from any claim or demand on these debts.
7. With the exception of the debts owed to CLP, Yankee Gas and SNET, for which the wife is responsible pursuant to paragraph 7 above, the husband shall be responsible for the liabilities CT Page 7899 listed on his financial affidavit, including his savings plan loan and car loan, and he shall indemnify and hold harmless the wife from any claim or demand on these debts.
8. The 1989 Oldsmobile Calais shall remain the exclusive property of the plaintiff, and she shall be responsible for the car insurance, tax, registration, repairs and all other expenses for said vehicle. The husband shall transfer all his right, title and interest in this vehicle to the plaintiff wife within 30 days of the date of this judgment.
9. The 1993 Mazda MX-6 shall remain the exclusive property of the husband, and he shall be responsible for the car loan, car insurance, tax, registration, repairs and all other expenses for said vehicle.
10. The People's Savings Account in the amount of $300.00 as shown on the husband's financial affidavit shall be his, free of any claim or demand by the wife.
11. The Fleet Bank Checking Account in the amount of $300.00 shown on the wife's financial affidavit shall be hers, free of any claim or demand by the husband.
12. The tangible personal property in the possession of the wife, including the dog, shall be solely hers free of any claim or demand by the husband. The wife shall be solely responsible for any expenses associated with the care and keeping of the dog, including veterinary expenses. The tangible personal property in the possession of the husband shall be wholly his, free of any claim or demand by the wife.
13. Whatever rights the husband has to utilize points toward the purchase of airline tickets or other items as a result of the use of his personal credit or telephone cards shall remain wholly his, free of any claim or demand by the wife.
14. The husband shall maintain the wife on his CIGNA health plan, provided it remains available to him through his employment, until December 31, 1996, and he shall pay the cost of maintaining said insurance for the wife until that date. The wife indicated that she will be joining her own health plan, available through her employment, before the end of this year.
15. Each party shall pay his or her own attorney's fees. CT Page 7900 Judgment shall enter in accordance with the foregoing.
KELLER, J.